6x7 Global Security
Lady Benjamin Cannon, ASCE
5024 3rd st
Suite 5
San Francisco, CA 94109
Phone 415.404.1917
artherd@me.com

Attorney in propia persona

FILED
NOV 02 2022
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

**UNITED STATES DISTRICT COURT,**

**NORTHERN DISTRICT OF CALIFORNIA**

TSH

CV22 6778

| | |
|---|---|
| LADY BENJAMIN CANNON, ASCE<br><br>Plaintiff,<br><br>vs.<br><br>SAN FRANCISCO POLICE DEPARTMENT, SAN FRANCISCO SHERIFFS DEPARTMENT, CITY AND COUNTY OF SAN FRANCISCO<br>and;<br>CAPTIAN DAVID MARON,<br>CAPTIAN "SANFORD",<br>MARGARET BAUMGARTNER<br>and;<br>CHARLES JADALLAH, RENA PROVENCIO, ANDREW WATTERS, DAVID WISEBLOOD, JIM MCCLAIN, EVERAL THOMPSON<br>and;<br>BLEDSOE, DIESTEL, TREPPA & CRANE LLP, DAVIS RILEY, CARLOS JATO, LAW OFFICEA OF CARLOS JATO, DANIEL BERKO, JASON HAIN, RYAN MURPPHY, KAVIN WILLIAMS, EVICTION DEFENSE COLLABORATIVE<br>and;<br>A FRIENDLY MOVERS;<br>and;<br>DOES 1 through 60 inclusive.<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES, PRAYER FOR RELIEF, AND JURY TRIAL DEMAND**<br><br>**42 U.S.C. § 1983, 1988**<br>**UNRUH CIVIL RIGHTS ACT**<br>**DEFAMATION, DEFAMATION PER SE**<br>**PC460 FELONY BURGLERY OF AN OCCUPIED DWELLING**<br>**PC135 DESTRUCTION OF EVIDENCE** |

COMES NOW Plaintiff LADY BENJAMIN CANNON, ASCE ("LADY"), files this Complaint alleging the following:

1. Many of the acts alleged in this complaint occurred in the City and County of San Francisco and involved real estate located within the boundaries of the City and County of San Francisco.

2. Plaintiff is in the business of providing high-speed internet services to businesses and persons who want high-speed internet including individuals and to corporations and other business entities.

THE PARTIES

3. Plaintiff LADY BENJAMIN CANNON, ASCE (hereafter "LADY") is a natural person over the age of eighteen years and a resident of San Francisco, and a co-founder, former board member, and Treasurer of The Calguns Foundation, Inc, a 501(c)(3) nonprofit legal defense fund. LADY is also a member of the American Society of Civil Engineers, and is an honorarium member of the IEEE Society. Additionally, LADY co-founded Romeo Power, a publically traded EV startup; NYSE:RMO

4. Defendant SAN FRANCISCO POLICE DEPARTMENT is a municipial entity in San Francisco, California.

5. Defendant SAN FRANCISCO SHERIFFS DEPARTMENT is a municipial entity in San Francisco, California.

6. Defendant CITY AND COUNTY OF SAN FRANCISCO is a municipial entity in San Francisco, California.

7. Defendant DAVID MARION ("MARION") is a natural person resident of the State of California and an employee of the SAN FRANCISCO POLICE DEPARTMENT where he takes on a supervisory role.

8. Defendant CAPTIAN "SANFORD" ("''SANFORD''") is a natural person resident of the State of California and an employee of the SAN FRANCISCO POLICE DEPARTMENT

where he takes on a supervisory role.

9. Defendant MARGARET BAUMGARTNER (“”BAUMGARTNER ””) is a natural person resident of the State of California and an employee of the SAN FRANCISCO SHERRIF’S DEPARTMENT where she occupies the role of Sherrif’s Legal Counsel. She takes on a supervisory role.

10.

11. Defendant CHARLES JADALLAH (“CJ”) is a natural person resident of the State of California, and as evidence in another civil suit against him has shown, potentially of Beruit, Lebanon, a hub for international terrorist activity and a recent payee of said defendant.

12. Defendant RENA PROVENCIO (“RP”) is a natural person resident of the State of California who holds a real estate license and holds herself as an agent for CJ during the time period relevant to this complaint, in realtiy PROVENCIO is merely JADALLAH’S live-in girlfriend and former real estate agent. Provencio holds herself out as acting in both the personal interests and business interests of Jadallah.

13. Defendant ANDREW WATTERS (“WATTERS”) is a transphobic natural person resident of the State of California who holds a law license and holds hinself as a private investigator, lawyer, entrapranuer, perspective FBI agent, and candidate for congress. WATTERS was also Chief Legal Officer and general counsel for LADY. WATTERS is presently suing LADY for being a “fake woman”. The judge in the District Court has recommended that his frivilious case be dismissed. Mr. Waters has also sued the FBI when they decined to hire him for failing a criminal background check. He lost[1]. Mr. Watters only case law was created when he and his client were sanctioned in the amount of nearly half a million dollars for repeated abuse

[1] https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=&cad=rja&uact=8&ved=2ahUKEwjyxJ-U6Ir7AhWqlWoFHeQEBi8QFnoECAwQAQ&url=https%3A%2F%2Fcasetext.com%2Fcase%2Fwatters-v-mueller&usg=AOvVaw0xiUTUfn-jcCFV5cbca_xu

and violating the courts' orders[2]. Otherwise, it appears that Mr. Watters is stalking his ex-girlfriend: https://www.andrewwatters.com/hall-of-shame/mahsa-parviz/[3]

14. Defendant JIM MCCLAIN ("MCCLAIN") is a natural person resident of the State of California who holds himself out to be a licensed contractor, but in-fact has never held a contractors license. MCCLAIN carries out various thuggery for JADALLAH and others inclouding without limitation, theft, breaking and entering, and unlicensed construction, a misdomenor..

15. Defendant ALAN MACKAY ("MACKAY") is a natural person resident of the State of California. MACKAY carries out various thuggery for JADALLAH and others including without limitation, theft, breaking and entering, and conspiracy re unlicensed construction, a misdomenor.

16. Defendant EVERAL THOMPSON ("THOMPSON") is a natural person resident of the State of California. THOMPSON is a convicted felon, on parole after serving jail time recently for assaulting an on-duty fire fighter with a deadly weapon, and being a felon in possession of a loaded handgun. THOMPSON was hired to threaten, intimidate, and terrify Plaintiff into surrendering her home extrajudically. Thompson's acts include including without limitation, theft, breaking and entering, and conspiracy re unlicensed construction, a misdomenor.

17. Defendant DAVID WISEBLOOD ("WISEBLOOD") is a natural person resident of the State of California who has been disbarred[4] for failing to perform legal services with competence, and for violating a court order, and others. He currently holds hinself as a lawyer, and is currently practicing law. WISEBLOOD runs a website at www.wisebloodlaw.com.

18. Defendant BLEDSOE, DIESTEL, TREPPA & CRANE LLP is a law firm and Limited Liability Partnership organized in California, and is the employer of Defendant DAVIS

---

[2] https://caselaw.findlaw.com/ca-court-of-appeal/1566241.html
[3] https://www.andrewwatters.com/hall-of-shame/mahsa-parviz/
[4] https://twitter.com/statebarca/status/1255888462143795203?lang=en

RILEY at all times relivent in this Complaint.

19. Defendant, DAVIS RILEY ("RILEY") , is a natural person, resident of the State of California and a lawyer employed by defendant BLEDSOE, DIESTEL, TREPPA & CRANE LLP. RILEY represented CJ during the time that LADY noticd CJ that she intended to move for a Temporary Restraining Order to protect her property. During the pendency of that proceeding, CJ disposed of LADY's property in a deliberate and overt act.

20. Defendant, CARLOS JATO ("JATO") , is a natural person resident of the State of California and a lawyer employed by defendant LAW OFFICES OF CARLOS JATO. JATO acted as an accessory to JADALLAH and other co-defendants by violating the unruh civil rights and in other ways such that he furthrued the goals of JADALLAH and others. JATO repeatedly yelled at, swore at, berated, defrauded, threatened, sexually harassed, and ultimately discriminated against LADY.

21. Defendant, DANIEL BERKO ("BERKO") , is a natural person resident of the State of California and a lawyer employed by defendant LAW OFFICES OF CARLOS JATO. JATO acted as an accessory to JADALLAH and other co-defendants by violating the unruh civil rights and in other ways such that he furthrued the goals of JADALLAH and others. BERKO repeatedly yelled at, swore at, berated, defrauded, threatened, sexually harassed, and ultimately discriminated against LADY. BERKO called LADY various names and called his law clerk, Nicole, also a lesbian, a discriminatory anti-gay slur, and has repeatedly verbally abused her as well, yelling, threatening, cursing, and sexually harassing her and LADY and others on information and belief.

22. Defendant, JASON HAIN ("HAIN") , is a natural person resident of the State of California and a lawyer employed by defendant EVICTION DEFENSE COLLABORATIVE. HAIN acted as an accessory to JADALLAH and other co-defendants by violating the unruh civil rights and in other ways such that he furthrued the goals of JADALLAH and others. HAIN repeatedly yelled at, swore at, berated, defrauded, threatened, sexually harassed, and ultimately

discriminated against LADY.

23. Defendant, KAVIN WILLIAMS ("WILLIAMS") , is a natural person resident of the State of California and a lawyer employed by defendant EVICTION DEFENSE COLLABORATIVE. WILLIAMS acted as an accessory to JADALLAH and other co-defendants by violating the unruh civil rights and in other ways such that he furthrued the goals of JADALLAH and others. WILLIAMS repeatedly yelled at, swore at, berated, defrauded, threatened, sexually harassed, and ultimately discriminated against LADY.

24. Defendant, RYAN MURPHY ("MURHPY") , is a natural person resident of the State of California and a lawyer employed by defendant EVICTION DEFENSE COLLABORATIVE. MURPHY acted as an accessory to JADALLAH and other co-defendants by violating the unruh civil rights and in other ways such that he furthrued the goals of JADALLAH and others. MURPHY had oversight and supervisory roles over the people who repeatedly yelled at, swore at, berated, defrauded, threatened, sexually harassed, and ultimately discriminated against LADY.

25. Defendant EVICTION DEFENSE COLLABORATIVEis a law firm and Limited Liability Partnership organized in California, and is the employer of Defendants HAIN, WILLIAMS, and MURPHY at all times relivent in this Complaint.

26. Defendant, A FRIENDLY MOVERS, is a corporation duly organized in the State of California.

27. Plaintiffs do not know the true names and/or capacities of those Defendants sued herein as DOES 1 through 60 inclusive. Plaintiffs are informed and believe and thereupon alleges that each of said Defendants is responsible in some way or manner for the damages that Plaintiffs complain of in this complaint. Each defendant (DOES inclusive) aided, abetted, supported, encouraged and advised the others defendants including all DOES defendants, in committing the acts and wrongs alleged here.

28. As used herein the word "person" includes a corporation, a partnership any other business entity as well as a natural person.

## JURISDICTION AND VENUE

29. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

30. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## STATEMENT OF FACTS

### BACKGROUND AND TENNANCY OF LADY CANNON

31. From July 16, 2009 until 2019 LADY and CJ were in a confidential relationship. During this period, LADY completely trusted CJ because, for among other reasons, CJ served on a startup owned by LADY and was on the Board of Advisors of that start-up and was a very trusted advisor, mentor, and confidant of LADY. LADY completely trusted CJ until 2018-2019 and LADY came out as transgender to CJ and other business associates. Shortly thereafter CJ's attitude toward her changed drastically from that of a mentor and trusted advisor and friend to CJ having contempt for LADY and wanting to injure her. He would succeed in his criminal endevours, and is being investigated by the San Francisco District Attorney's office for multiple felonies related to his burglary and assaults.

32. As an inducement for LLC to enter into the SM lease and the SF lease, and for LADY to move into and take occupancy of the SF PREMISES, DARWIN VENTURES, through CJ, promised to contact their 4,000 portfolio companies and instruct them to switch their telecom services and internet services to LLC. LLC entered into the leases and began construction on two data centers and entered into

numerous contracts with customers to provide its services to the customers. However, DARWIN did not follow through.

33. Because LADY always intended to use the SF PREMISES as a residence and CJ was aware of that and in fact encourgesd, advised and wanted LADY to use the SF PREMISES as a residence, and did in-fact demand residential rent from LADY, she therefore because a residential tenant at the SF PREMISES and her tenancy at the SF PREMISES was subject to and protected by the San Francisco Residential Rent Stabilization and Arbitration Ordinance (hereinafter also referred to as the San Francisco Rent Law or simply the Rent Law).

34. Additionally, the premesis was in-use residentially by a previous tenant at the time it was shown to LADY in Feb/March of 2018.

35. LADY and the LLC took occupancy of the SF PREMISES on or about March 1, 2018 (prior to the date the written lease was to start.)

36. At the time LADY and CJ entered into the agreement for the SF PREMISES, and the LLC entered into and took occupancy of the SM PREMISES, LADY identified herself to others in the business world as Benjamin Cannon, ostensibly a male. However, this changed, starting on or about December 2019, when LADY began to identify herself to others, including in her business community, including CJ and WERQWISE and MCKAY as a woman and changed her name to Lady Benjamin Cannon. It was thus a process starting in late 2018 through the end of 2019 that CJ, RP, WATTERS, and others learned that LADY was a woman.

37. Due to transphobia and his aversion to transgender individuals, once he realized that LADY identified as a woman, CJ decided to terminate all the business relationships between LADY and CJ and between the LLC and CJ despite the fact that the agreements between CJ, LADY and LLC were still ongoing and in full force and effect. CJ was on actual knowledge that his conduct would cause very

significant financial damages to both the LLC and LADY. CJ's actions included but were not limited to the following specific acts described below.

38. The primary motivating factor in CJ'S wrongful conduct toward LADY, as alleged in this complaint, was the fact she is transgender and a woman

39. RP knew, or should have know, that the primary motivating factor in CJ'S wrongful conduct toward LADY, as alleged in this complaint, was the fact she is transgender and a woman, and/or RP shared CJ's feelings herself.

40. Despite knowing the LADY was an occupant of the SF PREMISES, CJ demanded that LADY show the premises to rent it as an illegal cannabis operation.

41. In an effort to eject LADY from the premesis at 3rd st, CJ and RP initiated frequent and false/spurious access requests, seeking to harass and annoy LADY into finding another location.

42. LADY individually and on behalf of the 6X7 NETWORKS LLC rented, pursuant to a written rental agreement with CJ, the following real estate: 5030 3rd Street San Francisco, California 94124 and 5024 3rd Street, Unit 5, San Francisco, California 94124 ("SF PREMISES.") Unit 5 is a connected former meat locker intended for and used by LADY for residential occupancy starting March 1, 2018. She also had use of the entire premises for residential use and used it as such.

43. Defendants, and Does 1-60 were fully aware that they had a duty pursuant to the Rent Law and State law and Federal Law to comply with its requirements as to all aspects of LADY'S tenancy at the SF PREMISES because it was occupied as a residence by LADY.

44. CJ knew at least signing that the property had been cited and red-tagged by the City in or before 2005 for a strucutally un-sound sub-basement.

45. CJ falsely represented to LADY in the lease that the building was free from structural defects, which was a nesecceary element of the lease.

46. Because of these and other defects (including without limitation, rodent infestation, flooding, groundwater intrustion, strucutally unsound concrete, corroded rebar, and generally other deferred maintinence including the lack of any functioning heat in any part of the building including residential areas, ) LADY was unable to obtain the required permits for her datacenter business, or her residential airbnb business.

47. CJ is an expierence dreal estate developer, with approximately a doxen projects under his belt.

48. CJ knew or should have known that any violations prevent permits from being issued. CJ collected advance rent anyway.

49. CJ also refused to sign permits prepared by LADY's architects and engineers and thus made it impossible to operate a business or earn an income, and LADY lost money to the architects and engineers and contractors totallying in excess of $250,000.00NOVEMBER 3, 2021 BREAK-IN On November 3, 2021 and since at least June 2018, with the permission and consent of JADALLAH plaintiff was in actual, peaceful possession of the premises, located at 5030 3rd Street, San Francisco, California 94124 (hereafter, premises) as a residence subject to and protected by the San Francisco Residential Ret Stabilization Ordinance.)

50. On November 3, 2021, defendant(s), CJ, RP, WATTERS, SAN FRANCISCO SHERIFFS DEPARTMENT, and DOES 1 through 50, armed with rifles and handguns, sporting bullet-proof tactical gear, plus stun grenades and restraints, entered and possessed the premises breaking locks to the premises to gain entry. Since that date, the defendants have forcibly prevented plaintiff from regaining possession of the premises by changing the locks on the premises and causing the San Francisco Police to believe that JADALLAH had lawful possession of the premises and plaintiff LADY was a trespasser and therefore threaten physical force and imprisonment if LADY attempted to enter or possess the premises even though

she, at all times has the right to possession of the premises. By such forcible detainer, plaintiff has been deprived of possession of the premises and its contents.

51. Defendants have remained and continue to remain, without plaintiff's consent, inpossession of the premises and its contents up to and including the date of the verification of this complaint and are threatening to remain permanently in possession of the premises and its contents.

52. Plaintiff LADY has never been evicted from her home at 5030-5024 3rd st in San Francisco.

NOVEMBER 18 SFPD - FIRST ARMED THREAT OF ARREST

53. On or about November 18, 2021, armed agents from SAN FRANCISCO POLICE DEPARTMENT responded to 5030 3rd st due to a report of trespassing made by Defendant RP. LADY contacted the agents, and explained that she had not been evicted from her residence, that her landlord changed the locks after dismissing an eviction case against her, while she was in mexico, and that her mediccations and bed was inside, and she wanted to go home and take a bath.

54. SFPD agents told her that their captian, Dave Marion, had informed them that I had been evicted, and that I would be arrested under threat of lethal force if I attempted to go home.

DECEMBER 28, 2021 9:00AM BREAK-IN & SECOND ARMED THREAT OF ARREST

On December 28, 2021, CJ and RP and an unidentified locksmith and security guard broke-into LADY's residence and began changing her locks. LADY called 9-11. They all fled the scene when before SFPD arrived, however SFPD advised LADY that she cannot re-enter her home at 5030 3rd st or face armed arrest.

DECEMBER 28, 2021 10:00am 9-11 CALL & THIRD ARMED THREAT OF ARREST

55. On December 28, 2021, Defendant DOE 1, an employee or associate or gang-member of CJ, RP, or WATTERS; parked a silver GMC SUV in-front of Plaintiff LADY's front door, preventing her from accessing her home. When LADY asked DOE 1 to move her SUV, she refused. Subsequently upon reviewing her photos, it was noticed that DOE 1 had brought a very small child aged 3 or under along with her, and she was sitting unbelted and unrestrained outside of any child seat, in the front passenger seat of the vehicle. LADY called 9-11. When SFPD arrived, they dithered about wether to make her move until she agreed of her own violition to move. However SFPD advised LADY that she cannot re-enter her home at 5030 3rd st or face armed arrest. SFPD did not respond a second time when she blocked the door again.

JANUARY 22, 2022 1:00 PM BREAK-IN & FOURTH ARMED THREAT OF ARREST

56. After being served notice (delivered from LADY's counsel to DAVIS RILEY) that LADY was seeking a restraining order to protect her property, Defendants all conspired together to break-in and destroy her property before the order could be heard.

57. On January 22, 2022 at 1:00pm, Defendants DOES 2-10 were observed wearing shirts identifying them as employees of "A FRIENDLY MOVERS" in so much as they were wearing shirts that displayed the company's name on the back of the shirt. The Defendants were observed loading LADY's posessions in a large U-HAUL box truck. LADY called 9-11, and SFPD responded, and observed and even

assisted other defendants with loading LADY's property.

58. Despite being provided with all of the following:

59. An e-mail from SFSO Assistant Chief Legal Counsel Margret Baumgautdner, stating unequivicolally that LADY was an "unevicted tenant" and that "everyone agrees" "including landlord, landlord's representative, and the court" that LADY had never been evicted.

60. A Sherrif's File number whereby anyone can look up that LADY was not evicted.

61. An e-mail from Dave Marion authorizing LADY to arrest CJ for illegally locking her out.

62. A copy of the Dismissal of the UD case against LADY, FILED in the San Francisco Superior Court and stamped by the Clerk of that Court on 10-28-2021.

63. A copy of the Writ of Posession that clearly showed it did not apply to LADY.

64. The SFPD still refused to intervene, even though LADY asked them to arrest everyone involved, and stop the theft of her belongings worth over $950 from her occupied dwelling.

65. CJ told SFPD that LADY had been evicted, a lie.

66. SFPD was able to contact Captian "SANFORD" with the San Francisco County Sheriff's office, however he was unable to open the Sheriff's file, and the Legal Counsel Office was closed on weekends, so they were unable to determine what happened, which is that nothing happened and LADY possesses her home. Captian "SANFORD", relying on no information but upon prejudice in his mind against transgender people, incorrectly and maliciously, deliberately and intentionally advised SFPD that it looked to him like there was an eviction that covered LADY, even though there was not.

67. Defendants SFPD even spoke with LADY's lawyer, Daniel Berko, who clearly and thoroughly laid out to them why LADY was legally still in possession of her home,

and that a crime was occurring, to wit PC460 burglery of an occupied dwelling.

68. SFPD did nothing to stop Defendants, and conspired with defendants to continue, and, threatened LADY with arrest for trespassing and vandalism if she attempted to go home, and left the scene.

JANUARY 23, 2022 9:00AM BREAK-IN & FIFTH ARMED THREAT OF ARREST

69. On January 23, 2022 at 9:00am, Defendants CJ, RP, and DOES 2-10 were observed loading LADY's posessions in a large U-HAUL box truck. LADY called 9-11, and SFPD responded, and observed and even assisted other defendants with loading LADY's property.

70. Despite being provided with all of the following:

71. An e-mail from SFSO Assistant Chief Legal Counsel Margaret Baumgautner, stating unequivicolally that LADY was an "unevicted tenant" and that "everyone agrees" "including landlord, landlord's representative, and the court" that LADY had never been evicted.

72. A Sherrif's File number whereby anyone can look up that LADY was not evicted.

73. An e-mail from Dave Marion authorizing LADY to arrest CJ for illegally locking her out.

74. A copy of the Dismissal of the UD case against LADY, FILED in the San Francisco Superior Court and stamped by the Clerk of that Court on 10-28-2021.

75. A copy of the Writ of Posession that clearly showed it did not apply to LADY.

76. The SFPD again refused to intervene, even though LADY asked them again to arrest everyone involved, and to again stop the theft of her belongings worth over $950 from her occupied dwelling. This time Defendants placed LADY's medically required memory foam mattress and box-spring in the street (See **Exhibit**

**"B" Mattress** attached and incorporated as though fully set forth herein), destroying it, and leaving it for garbage collection on trash day.

77. In addition, they brutally threw and dragged a substantioal amount of her property outside into the street and yard, destroying it. Amoung the priceless artifacts destroyed, were one-of-a-kind diepole inverted-titanium dioxide and Kevlar/Aramid-fiber loudspeakers that LADY built by hand 25 years ago with the now deceased famous acoustic scientist Sigfried Linkwitz.

78. SFPD again did nothing to stop Defendants, and again conspired with defendants to continue, and, and again threatened LADY with arrest for trespassing and vandalism if she attempted to go home, and again left the scene.

79. THEFT AND CONVERSION

80. Defendants have stolen or otherwise diverted for tehir own use, many of LADY's assets, including the fan that cools her bed night, her underwear, and her iPhone.

81. Attached as (See **Exhibit "A" iPhone Activation)** attached and incorporated as though fully set forth herein), is a message from Apple iCloud showing an unkownn 3rd party attempting to factory-reset one of LB's many iPhones. This phone was stolen in the Nov3 break-in.

82. Attached as **Exhibit "C"** (attached and incorporated as though fully set forth herein) is a photograph of LB in her residence in the 3rd floor mezzanine of 5030 3rd st.

83. Attached as **Exhibit "D"** (attached and incorporated as though fully set forth herein) is a photograph of LB's washing machines and bath tub on floor mezzanine of 5030 3rd st, taken by Charles Jadallah.

84.

GENERAL

85. At all times relevant hereto, unless otherwise clearly stated, all of the Defendants were acting on behalf of each and every other Defendant (DOES inclusive) and each Defendant has ratified, approved, aided, abetted, and endorsed the actions of each and every other Defendant.

86. At all times material hereto, Defendants were acting under the color of state law.

**PRIVATE PARTIES AS STATE ACTORS**

87. The Ninth Circuit recognizes at least four different criteria or tests to evaluate whether a private actor has engaged in "significant" state action: (1) public function, (2) joint action, (3) compulsion or coercion, and (4) governmental nexus. Kirtley v. Rainey, 326 F.3d 1088, 1092; see also Sutton, 192 F.3d at 835-36; Johnson v. Knowles, 113 F.3d 1114, 118, (9t h Cir. 1996); Howerton, 708 F.2d at 382-83. In Brunette v. Humane Society of Ventura County, 294 F.3d 1205 (9th Cir. 2002), the court potentially expanded those criteria by applying what it called the symbiotic relationship test.

Satisfaction of any one of the tests is sufficient to find state action by a private actor. Lee v. Katz, 276 F.3d 550, at 554 (9t h Cir. 2002).

Public Function Test.

88. Private activity becomes a "public function" only if that action has been "traditionally the exclusive prerogative of the state." Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982). If private actors hold elections, govern a town, or serve as an international peacekeeping force, they have been held responsible as state actors. Brunette, 294 F.3d at 1214. On the other hand, if private actors educate "maladjusted" youth, or resolve credit disputes, they have not been held to perform

an exclusive prerogative of the state, and thus, are not responsible as state actors. Id . The public function test is satisfied only on a showing that the function at issue is "both traditionally and exclusively governmental." Kirtley, 326 F.3d at 1093.

89. Evictions are not only traditionally and exclusively governmental, but are exclusively governmental per statute. The space is solely and exclusively occupied by the state.

Joint Action Test.

90. To be engaged in joint action, a private party must be a "willful participant" with the state or its agents in an activity which deprives others of constitutional rights. Dennis, 449 U.S. at 27. Substantial cooperation between the private party and the state must be shown. Mathis v. Pac. Gas & Elec. Co., 75 F.3d 498, 503 (9t h Cir. 1996). An agreement between government and a private party for some governmental-type action can create state action. Johnson, 113 F.3d at 1119.

91. ***"Joint action" or "substantial cooperation" can also be shown where a conspiracy can be established between the private party and the state.*** (emphasis added) See, United Steelworkers of America v. Phelps Dodge Corporation, 865 F.2d 1539, 1546-47 (9th Cir. 1989). To prove a conspiracy, the plaintiff must show an agreement or "meeting of the minds" to violate constitutional rights. Id. at 1540-41. To be liable, each participant in the conspiracy need not know the details of the plan, but each participant must at the very least share the common objective of the conspiracy. Id. at 1541. ***Evidence that police failed to exercise independent judgment will support an inference of conspiracy with a private party. Id*** .(emphasis added)

92. It is clear in this case that police failed to exercise independent jdugement in that they did not read the words that LADY presented to them and were presented to

them through LADY's attorney.

Compulsion/Coercion Test.

93. State action may be found under the state compulsion test where the state has "exercised coercive power or has provided such significant encouragement, either overt or covert, that the [private actor's] choice must in law be deemed to be that of the state." Johnson, 113 F.3d at 1119, (quoting Blum v. Yaretsky, 457 U.S. 991, 1004, (1982)). A plaintiff must establish that a state regulation or custom having the force of law "compelled, coerced, or encouraged" the defendant to discriminate against the plaintiff. Johnson, 113 F.3d at 1119. However, acting under lawful or legitimate law does not convert a private individual's actions into state action. Id.

Nexus Test.

94. The nexus test asks whether "there is such a close nexus between the state and the challenged action that the seemingly private behavior may be fairly treated as that of the state itself." Brentwood Academy v. Tennessee Secondary School Athletic Assoc., 531 U.S. 288, 295 (2001) see also Jackson v. Metropolitan Edison, Co., 419 U.S. 345, 351, (1974).

95. In this case, SFPD officers repeated the same lie that CJ repeated, "LADY has been evicted". This occurred over multiple days weeks months, even years.

Symbiotic Relationship Test.

96. The symbiotic relationship test is a derivative of the joint action test and asks whether the government has "so far insinuated itself into a position of interdependence (with the private entity) that it must be recognized as a joint participant in the challenged activity." Brunette, 294 F.3d at 1213, (quoting Burton

v. Wilmington Parking Authority, 365 U.S. 715, 725 (1961)). Substantial coordination and integration between the private party and the government are the essence of a symbiotic relationship. Id. A significant financial integration may form the nexus of a symbiotic relationship. Rendell-Baker, 457 U.S. at 842-43. A symbiotic relationship may also arise from of the government's exercise of control over the private party's actions. Brunette, 294 F.3d at 1213.

97. These tests, a klatch of ambiguity, appear to be purposefully so. "While these factors are helpful in determining the significance of state involvement, there is no specific formula for defining state action." Sutton, 192 F.3d at 836 (quoting, Howerton, 708, F.2d at 383.) The inquiry into whether a private person is subject to § 1983 liability is, accordingly, a maddeningly a fact-bound one. Lugar v. Edmondson Oil Co., 457 U.S. 922, 939 (1982). "Only by sifting facts and weighing circumstances can the non-obvious involvement of the state in private conduct be attributed its true significance." Howerton, 708 F.2d at 383, (quoting, Burton, 365 U.S. at 722). In other words, ***courts have tremendous discretion in applying the criterion to the peril of private actors***.(emphasis added)

98.

99. EXAMPLES OF PRIVATE PARTIES HELD TO BE LIABLE UNDER 42 U.S.C. § 1983

100. Off-duty police officers

101. In Rossignol v. Vooraar, 316 F.3d 516 (4t h Cir. 2003), off-duty sheriffs deputies, the sheriff and a political candidate were held to have acted under color of state law when they interfered with a newspaper publisher's First Amendment rights by conspiring and carrying out a plan to buy all newspapers in the community because they were critical of the sheriff, deputies, and the political candidate. The conspiracy was partially planned while officers were on-duty and the officers were

recognized as "police" during their late night newspaper buying spree.

102. In Memphis v. City of Memphis, 361 F.3d 898 (2004), the court found evidence that supported a conspiracy between a private employer, the city police officers, and a private security company that hired the off-duty officers to violate the civil rights of the employer's striking workers. The employer, the city, the off-duty officers and the security company were subject to liability under § 1983.

Conspiracy with the courts.

103. Dennis v. Sparks, 449 U.S. 24 (1980), the Court found that although the judge involved in an alleged conspiracy had absolute immunity from suit, the other participants in the conspiracy could be subject to § 1983 liability and the judge would be required to testify in the action. In Dennis, the plaintiffs were enjoined from the production of oil by an illegally issued injunction. The court held that the other participants in the conspiracy to issue the illegal injunction, other than the judge, were subject to liability under § 1983 – "there but for the grace of God . . .," the court may have uttered.

PRIVATE ATTORNEYS AS STATE ACTORS

104. In DuBose v. Kelly, 187 F.3d 999 (8t h Cir. 1999), the court held that private attorneys who conspired with the court to deprive a client of his due process rights could be held liable under § 1983. The attorneys and a state court judge "fixed" a legal malpractice case by the plaintiff against his previous legal counsel, and broke the seal on private § 1983 liability.

Private businesses operating in state owned facilities.

105. In Lee v. Katz, 276 F.3d 550 (9t h Cir. 2002), a private lessee of a public outdoor area owned by the city was held to be performing a "public function" by regulating free speech activities on a portion of the property that was open to public speech and thus was subject to suit under § 1983.

106. Burton v. Wilmington Parking Authority, 365 U.S. 715 (1961), the Court held that the refusal of a restaurant located in a public parking garage to serve minorities constituted state action. The Court stressed that the restaurant was located on public property and that the rent from the restaurant contributed to the support of the garage. Further, the Court concluded that the state profited from the restaurant's discriminatory conduct.

Press/media coverage of a search and seizure with law enforcement officers.

107. In Berger v. Hanlon, 129 F.3d 505 (9th Cir. 1997), vacated and remanded by 526 U.S. 808 (1999), judgment reinstated by 188 F.3d 1155 (9t h Cir. 1999), Cable News Network (CNN) was held to have acted together with the United States Fish & Wildlife Service (USFWS) in executing a criminal search warrant. CNN and an assistant U.S. Attorney entered into a letter of agreement to allow CNN to film the execution of the search warrant. The court found that CNN was inextricably involved with both the planning and execution of the search and thus subject to § 1983 liability. On the other hand, in Brunette v. Humane Society of Ventura County, 294 F.3d 1205 (9t h Cir. 2002), the court found that mere videotaping and photographing by the media during a search and seizure on invitation by the government agency was not a public function and the newspaper was not subject to liability under § 1983.

Private contract doctors for county mental health facility.

In Jensen v. Lane County, 222 F.3d 570 (9th Cir. 2000) a private physician to the county was held to be a state actor and subject to § 1983 liability because of the contract services he provided to a county owned and operated mental health treatment facility. The court found that the physician and the other county employees involved had undertaken a complex and deeply intertwined process of evaluating and detaining individuals believed to be mentally ill and of a danger, which process led to the alleged deprivation. However, in Blum v. Yaretsky, 457 U.S. 991 (1982) the Court found no state action where private nursing homes, which were heavily regulated and licensed, and received significant state funding, downgraded the care of patients. The decision in Blum turned on medical judgments made by private parties according to professional standards not established by the state.

Private detoxification facility interacting with law enforcement officials.

108. In Anaya v. Crossroads Managed Care Systems, 195 F.3d 584 (10t h Cir. 1999), the court found factual issues as to whether the private operator of a detoxification facility was a state actor and subject to liability under § 1983. The issue was whether the operators of the detoxification center directly participated in creation of a city policy that resulted in the detention of individuals without probable cause. The board for the facility was closely associated with members of the city police department, including the chief of police.

Private operators of prison facilities.

109. In Rosborough v. Management & Training Corp., 350 F.3d 459 (5t h Cir. 2003), a private prison management corporation and its employees were deemed to perform a public function and as such could be sued under § 1983.

110. Private non-profit state wide athletic association working on behalf of public schools.

111. Brentwood Academy v. Tennessee Secondary School Athletic Assoc., 531 U.S. 288 (2001), the Court found that a private not-for-profit corporation organized to regulate interscholastic sports among both public and private high schools had acted under color of state law when it imposed sanctions on the plaintiff's athletic activities. The Court found a pervasive entwinement of the state school officials and the private athletic association.

Eviction by private landlord.

112. In Howerton v. Gabica, 708 F.2d 380 (9t h Cir. 1983), a private landlord was held to have acted under color of state law when she (with police aid) used self-help to evict tenants without providing proper notice and a prior judicial hearing. The police officer was not only used for serving the eviction notice and utility shut-off notice by request of the landlord but also returned later to warn the tenants not to make trouble.

113. In Soldal v. Cook County, 506 U.S. 56 (1992), the controlling case on the matter, private parties were again found to be state actors during an eviction in which a criminal conspiracy of private parties and police "did not have an eviction order" and "its actions were unlawful" when undertaking an armed eviction and seizure and destruction of plaintiff's property. The sizure was "contrary to the law" and done "in the absence of objectively reasonable grounds for doing so"

114. Plaintiff Soldal tried to have his landlord arrested, but the police refused to take the arrest, instead claiming it to be a "civil matter" just like in the instant case before this Court today. Indeed, the cases are hauntingly familiar, with the United States Supreme Court clearly establishing the conduct as violative of constitutional rights

held most sacred.

Private party's involvement with defective state statute for seizure of property for debt owed

115. In Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982), a private party creditor's joint participation with state officials in the seizure of property under a statutory scheme that was procedurally defective under the Due Process Clause and created a valid cause of action under §1983 for the plaintiff debtor.

116. Conspiracy between corporation and law enforcement officers to deprive striking union workers of their constitutional rights.

117. In United Steelworkers of America v. Phelps Dodge Corporation, 865 F.2d 1539 (9t h Cir. 1989), a corporation that wielded significant power particularly with local law enforcement in a small mining town was held subject to liability under § 1983 as a joint conspirator along with local law enforcement against striking union workers. The court determined that the corporation had been instrumental in a decision to issue warrants for striking workers and then to set excessive bail. Strike breakers, hired by the corporation, who had also been involved in the incidents received lesser charges and lower bail levels.

SUMMARY OF PRIVATE PARTY LIABILITY

118. It is clear that a myriad of private party involvement with government actors or organizations can lead to liability for the nongovernmental organization under the Act. The risk of such liability varies greatly depending upon the nature of the task being performed, the degree of governmental involvement and/or supervision, whether the project is funded by governmental dollars, and the nature of the government-style impact the action has on the citizenry.

III. THE RAMIFICATIONS FOR PRIVATE ACTORS.

119. Unfortunately for unsuspecting parties, the Act packs a wallop. Private entities without significant knowledge of governmental liability in general, and more precisely potential liability under the Act, will likely be unaware of the substantial risks presented by such a claim. Risks include punitive damages and attorney fees, not readily available against private parties in most states.

120. Private defendants will also be required to defend on their own dime, unlike governmental actors with public support for defense costs.

III. The role of traditional defenses in private party § 1983 actions.

121. Experienced practitioners are well aware of the unique defenses and strategies that accompany the defense of a civil rights action against a government actor – foremost qualified immunity for individuals and the strict requirements of Monell for their employing jurisdictions. Whether similar defenses exist for private actors is far murkier.

122. ***A private person who is sued under 42 U.S.C. § 1983 is not entitled to the same qualified immunity as the government official.*** While the Supreme Court has addressed this issue, it arguably has not given the lower courts much direction. Although some of the circuits in limited circumstances recognize qualified immunity for private parties subject to liability under 42 U.S.C. § 1983, the Ninth Circuit generally does not.

Qualified immunity for individual private actors.

123. While it has blazed a trail for private actor liability under the Act, the Supreme Court has not clearly answered whether a private person could invoke the qualified

immunity defense. See, e.g., Lugar v Edmondson Oil Co., 457 U.S. 922, n. 23 (1982); Wyatt v. Cole, 504 U.S. 158 (1992); Richardson v. McKnight, 521 U.S. 399 (1997).

124. The Supreme Court again addressed whether private actors had available to them qualified immunity from § 1983 in Richardson v. McKnight, 521 U.S. 399 (1997). Richardson, the court described the circumstances as "one in which a private firm, systematically organized to assume a major lengthy administrative task (managing an institution) which limited direct supervision by the government, undertakes that task for profit and potentially in competition with other firms." Id. at 413. The Court found that privately employed prison guards were not entitled to qualified immunity. Id

DAMAGES

125. Reasonable value for use of the premises is and at all relevant times has been at least $1600.00 per day. Damages have accrued at that daily rate since the date of the forcible detainer and will continue to accrue to plaintiff at that rate until possession of the premises is restored to plaintiff.

126. By defendants' actions, plaintiff has been deprived of the use of personal property valued in excess of $25,000,000.00 located on the premises. The reasonable value for the use of such property is at least $6899.38 per day. Damages have accrued at that rate and will continue to accrue at that rate until possession of the premises is restored to plaintiff.

127. It now appears that Plaintiff has lost substantially all of her personal property., as such damages of $25,000,000.00 apply.

128. In addition, Plaintiff has lost her startup company, 6x7 Networks, worth $100,000,00.00 as valued in a recent financing round.

129. Plaintiff has suffered emotional and mental distress in an amount to be determined after trial as a consequence of the defendants' actions.

130. Defendants, fully knowing the consequences of their actions, acted intentionally and with fraud oppression and malice to forcibly detain and deprive plaintiff of (his/her) premises and its contents and therefore plaintiff is entitled to treble damages.

131. All acts and ommissions of all defendants was done in bad faith and in knowing violation of state, Federal, and San Francisco law.

132. As such, punative and treble damages also apply

## THE ATTORNEYS

133. BORNSTIEN represented Jadallah and introduced him into unsavory and criminal contractors and DOES. It was at his advice that CJ lied to SFPD, and engaged SFPD and SFSO to commit armed assault on LADY by falsely claiming he had evicted her.

134. RILEY represented Jadallah and introduced him into unsavory and criminal contractors and DOES. It was at his advice that CJ lied to SFPD, and engaged SFPD and SFSO to commit armed assault on LADY by falsely claiming he had evicted her. Additonally, RILEY threatened to, and indeed did conspire to, and other Defendants did in-fact, place LADY's personal property outside in the January winter weather. RILEY commermrated his threats in an e-mail to LADY's attorney sent late Friday afternoon Jnauary 21, 2022, too late for LADY to seek an emergency ex-parte order. The threat was carried out, and most of LADY's property has been destroyed.

## THE SOON TO BE DISBARRED ATTORNEY

135. WATTERS is a transphobe who is suing LADY for being a fake woman.

136. WATTERS was formerly LADY's lawyer and in-house counsel at her startup company. After discovering LADY is transgender, WATTERS quit, and promptly sued LADY for being a fake woman. The District Court has dismissed WATTERS' suit sue esponte.

137. WATTERS also sued the FBI when they did not hire him after he failed a criminal background check[5].

138. The only case law WATTERS ever made was when he was sanctioned by the Appellate court for fraud oppression and malice see in re marriage of Davenport[6].

THE DISBARRED ATTORNEY

139. WISEBLOOD was disbarred in 2020 for multiple repeated acts of fraud, oppression, malice, and moral turpitude[7]. WISEBLOOD prepared legal documents for CJ, negotiated with opposing counsel for CJ, until opposing counsel determined that he was a disbarred attorney practicing law without a license, a felony, and broke off contact. WISEBLOOD came up with the idea of removing property from 5030 in the first place. WISEBLOOD conspired with the other Defendants. As recently as January 25, 2022, WISEBLOOD held himself out on wisebloodlaw.com to be an accomplished and effective Attrorney, bragging about the types of cases he actively prosecutes and his track record as an attorney.

---

[5] https://casetext.com/case/watters-v-mueller (RNJ

[6] https://caselaw.findlaw.com/ca-court-of-appeal/1566241.html (RNJ)

[7] https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=&ved=2ahUKEwi05bqzz4_7AhVlKH0KHaFxBCAQFnoECAoQAQ&url=https%3A%2F%2Ftwitter.com%2Fstatebarca%2Fstatus%2F1255888462143795203%3Flang%3Den&usg=AOvVaw0275zHle3Pgt2DkNZHzQJY (RJN)

## FIRST CAUSE OF ACTION

**DUE PROCESS, UNLAWFUL SIEZURE, AND EQUAL PROTECTION**

**FOURTH & FOURTEENTH AMENDMENT**

**Brought under 42 U.S.C. §1983**

**AGAINST ALL DEFENDANTS**

1. Plaintiff incorporates herein all of the allegations, averments and matters contained as alleged heretofore as if set forth at length herein *in haec verba.*

2. Defendants broke into Plaintiff's home and burglarized her occupied residential dwelling without probable cause, threatened her out of spite, and unlawfully seized and damaged her personal property including priceless and irreplaceable personal effects and antiques.

3. In so doing, Defendants acted under color of state law to deprive Plaintiff of certain constitutionally protected rights under the Fourth, and Fourteenth Amendments to the Constitution of the United States including, but not limited to: a) the right to be free from unreasonable searches and seizures; b) the right not to be deprived of liberty without due process of law; c) the right not to be deprived of property without due process of law; d) the right to be free from excessive use of force by persons acting under color of state law; e) the right to equal protection under the law; and f) the right to just compensation for taking of or damage to property.

4. As a direct and proximate result of the violation of their constitutional rights by the Defendants, Plaintiffs suffered general and special damages as alleged in this Complaint and are entitled to relief under 42 U.S.C §1983.

5. The conduct of Defendants was willful, malicious, oppressive and/or reckless, was undertaken with willful disregard of Plaintiff's rights, and was of such a nature that

punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

6. 85. Defendants' actions during the encounter violated Plaintiff's rights, including those protected by Article 1, Sections 1, 2, and 13 of the California Constitution.

**SECOND CAUSE OF ACTION**

**EXCESSIVE FORCE**

**FOURTH AMENDMENT**

**Brought under 42 U.S.C. §1983**

**AGAINST ALL DEFENDANTS**

1. Plaintiff incorporates herein all of the allegations, averments and matters contained as alleged heretofore as if set forth at length herein *in haec verba.*
2. Any force used to effect an unconstitutional act is inherently excessive.
3. When Defendants broke-into LADY's occupied residential dwelling, they did so armed with firearms, including without limitation, rifles, shotguns, and handguns, as well as retention ties, handcuffs, stun guns, and chemical agents banned under the Geneva Convention.
4. Defendants threatened to arrest her and employ these various agents upon Plaintiff if she attemted to intervene, or indeed, even if she went home to take a shower.
5. Indeed, Defendants threatened her with armed arrest no less than 5 separate times on 5 separate occations.
6. In violating Plaintiffs' rights as set forth above and other rights that will be proven at trial, Defendants acted under color of state law and conducted an unauthorized, warrantless illegal, seizure of Plaintiff's property. The illegal and warrantless

siezure set into motion the chain of events that led to the use of excessive force by Defendants, in violation of Plaintiffs' rights under the Fourth and other Amendments to the Constitution of the United States.

7. As a direct and proximate result of the violation of their constitutional rights by the Defendants, Plaintiffs suffered general and special damages as alleged in this Complaint and are entitled to relief under 42 U.S.C §1983.

8. The conduct of Defendants was willful, malicious, oppressive and/or reckless, was undertaken with willful disregard of Plaintiff's rights, and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

9. Defendants' actions during the encounter violated Plaintiff's rights, including those protected by Article 1, Sections 1, 2, and 13 of the California Constitution.

10.

**<u>THIRD CAUSE OF ACTION</u>**

**FAUILRE TO TRAIN**

**Brought under 42 U.S.C. §1983**

**AGAINST DEFENDANTS DAVID MARON and CAPTIAN SANFORD and ALL POLICE/SO DEPARTMENTS, CITY AND COUNTY OF SAN FRANCISCO**

1. Plaintiff incorporates herein all of the allegations, averments and matters contained as alleged heretofore as if set forth at length herein *in haec verba.*

2. Defendants, as a matter of custom, practice, and policy failed to maintain adequate and proper training for police officers in the department necessary to educate the officers as to the Constitutional rights of defendants, to prevent the consistent and systematic use of improper seizures, threats, evictions, and to prevent the improper

use of force by officers.

3. Defendants, as a matter of custom, practice, and policy failed to maintain adequate and proper training for police officers in the department necessary to educate the officers as to the Constitutional rights of defendants, to prevent the systematic collaboration with private parties.

4. Defendants failed to provide adequate training to police officers that hold the power, authority, insignia, equipment and arms entrusted to them.

5. Said custom, practice, and policy included a failure to adequately investigate, supervise, and discipline offending officers, which fostered the custom, practice, and policy within the Departments which resulted in the above pled facts.

6. Therefore, these Defendants, with deliberate indifference, disregarded a duty to protect the public from official misconduct.

7. The failure to promulgate or maintain constitutionally adequate policies regarding training was done with deliberate indifference to the right of Plaintiff and others in her position.

8. As a direct and proximate result of Defendants' actions, Plaintiff has been and continues to be damaged in an amount to be proven at trial. Furthermore, because Defendants' conduct was undertaken in bad faith and with fraud, malice, and oppression, Plaintiff is entitled to punitive damages.

**FOURTH CAUSE OF ACTION**

**CONVERSION**

**Brought under State tort law**

**AGAINST ALL DEFENDANTS**

1. Plaintiff incorporates herein all of the allegations, averments and matters contained as alleged heretofore as if set forth at length herein *in haec verba.*

2. Defendants, either directly or through acting as agencts of others or conspiring together, did wrongfully and intentionally interfere with the property of plaintiff, with the intent to deprive the owner of the property.

3. It is undisputed that Plaintiff had ownership of her own property in her own home, and there is a rebutable presumption to that effect. Defendants admitted to taking the property or interfered with the owner's ability to use it

4. This was done without her consent

5. Plaintiff suffered damages as a result

6. Defendants together and individudually, did in-fact collaborate to and or otherwose interfere with the ability of plaintiff to use her property, did take her property, and did destroy much of her property. Evidence including without limitation, the iPhone Activation (exhibit A) message, clearly show evidence of this. Exhibits B-D clearly evidence theft conversion and unlawful and deliberate taking of plaintiff's assets withtou compensation.

7. In particular dragging her mattress into the middle of revere ave on trash day, on a day Jadallah was present and supervising, was particularily egregious and obviously intentional.

8. Plaintff suffered immense damages from this and may never recover.

9. Therefore, these Defendants, with deliberate indifference, willful negligence, and oppression fraud and malice

10. As a direct and proximate result of Defendants' actions, Plaintiff has been and continues to be damaged in an amount to be proven at trial. Furthermore, because Defendants' conduct was undertaken in bad faith and with fraud, malice, and oppression, Plaintiff is entitled to punitive damages.

## FIFTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**Brought under State tort law**

## AGAINST ALL DEFENDANTS

1. Plaintiff incorporates herein all of the allegations, averments and matters contained as alleged heretofore as if set forth at length herein *in haec verba.*

2. Defendants, either directly or through acting as agencts of others or conspiring together, did wrongfully and intentionally interfere with the property of plaintiff, with the intent to deprive the owner of the property.

3. It is undisputed that Defendants willfully and intentionally, without limitation, burglarized Lady Benjmain's occupied dwelling, dragged her mattress into the middle of the street, then falsely claimed they saw "no evidence" she was living there.

4. Defendants threw away or destroyed or stole for their own use – many or all of Plaintiff's personal effects, including without limitation gifts from deceased romantic partners, artifacts and loudspeakers she build as a child with noted audio engineers who are now also deceased, etc. No amount of money can ever compensate for these losses, but some is a start.

5. The acts of Defendants were not only deliberate and reckless, but they were all warned beforehand that their actions were illegal through Plaintiff's counsel. In particular, attorney Jason Hain had many detailed conversations explaining the peril that Lady Benjamin was in at the hands of Defendants, should they in the future intend to break the law. On Nov 3 2021, they did in-fact break the law and committed PC460, burglary of an occupied dwelling.

6. The Defendants later attempted to cover up or conceal their criminal acts, denying under oath that there was any evidence Lady Benjamin lived in the subject

premesis, when they in-fact literally attempted to throw that evidence away.

7. This conduct is extreme, and outrageous. Ordinarly people do not commit felony burglary of an occupied dwelling. Oridnary people do not see evidence of habitation, and then hire a convicted felon and a group of ten to dispose of said evidence.

8. Ordinary people do not break-in to an apartment 3 times in a row, in effort to inditmidate Plaintiff into surrendering her residence extrajudically and to force her out of her home at gunpoint[8].

9. Plaintiff suffered severel psychological and damages as a result of Defendant's many bad, deliberate, and criminal acts. The damage continues to this day, and is likely to last the rest of her life.

10. A team of researchers led by Alicia K. Smith, Ph.D., and Kerry Ressler, M.D., Ph.D., set out to evaluate how trauma and PTSD affect the brain and the expected lifespan of sufferers, using brain scanning technology and a new assessment tool called GrimAge. Publishing their results in the journal Neuropsychopharmacology, their findings were consistent with prior research indicating that trauma and PTSD appear to significantly accelerate cellular aging. And they generated direct evidence that PTSD in some people is likely to shorten expected lifespan as well as increase the risk of neurodegeneration by thinning portions of the brain's cortex[9].

11. Defendants together and individudually, did in-fact collaborate to and or otherwose interfere with the ability of plaintiff to use her property, did take her property, and did destroy much of her property. Evidence including without limitation, the iPhone Activation (exhibit A) message, clearly show evidence of this. Exhibits B-D clearly

[8] https://www.ktvu.com/news/san-pablo-man-arrested-as-suspect-in-vehicle-assault-of-petaluma-firefighter

[9] https://www.psychologytoday.com/us/blog/brain-and-behavior/202102/ptsd-stress-and-shorter-expected-lifespan

evidence theft conversion and unlawful and deliberate taking of plaintiff's assets withtou compensation.

12. In particular dragging her mattress into the middle of revere ave on trash day, on a day Jadallah was present and supervising, was particularily egregious and obviously intentional.

13. Plaintff suffered immense damages from this and may never recover.

14. Therefore, these Defendants, with deliberate indifference, willful negligence, and oppression fraud and malice.

15. As a direct and proximate result of Defendants' actions, Plaintiff has been and continues to be damaged in an amount to be proven at trial. Furthermore, because Defendants' conduct was undertaken in bad faith and with fraud, malice, and oppression, Plaintiff is entitled to punitive damages.

## SIXTH CAUSE OF ACTION

**PC460 FELONY BURGLERY OF AN OCCUPIED DWELLING**

**Brought under State tort law and 42USC 1983 including without limitation the 4th and 14th amendment.**

**AGAINST ALL DEFENDANTS**

1. Plaintiff incorporates herein all of the allegations, averments and matters contained as alleged heretofore as if set forth at length herein *in haec verba.*

2. Defendants, either directly or through acting as agencts of others or conspiring together, did wrongfully and intentionally interfere with the property of plaintiff, with the intent to deprive the owner of the property.

3. It is undisputed that Defendants willfully and intentionally, without limitation, burglarized Lady Benjmain's occupied dwelling, dragged her mattress into the

middle of the street, then falsely claimed they saw "no evidence" she was living there.

4. It is further undisputed that Defendants took more than $950 worth of property from the premesis.

5. Based on the presense of a locksmith and an unlicensed general contractor (Jim McClain) it is furhtur clear that Defendants intented to unlawfully enter the locked dwelling.

6. Video evidence shows the Defendants breaking and entering into the occupiued dwelling, and later video evidence shows Defendants removing more than $950 of property from the premesis.

7. Video evidence shows Defendants being advised they are breaking and entering, defendants did not stop or otherwise abate their criminal enterprise in any way.

8. Defendants threw away or destroyed or stole for their own use – many or all of Plaintiff's personal effects, including without limitation gifts from deceased romantic partners, artifacts and loudspeakers she build as a child with noted audio engineers who are now also deceased, etc. No amount of money can ever compensate for these losses, but some is a start.

9. The acts of Defendants were not only deliberate and reckless, but they were all warned beforehand that their actions were illegal through Plaintiff's counsel. In particular, attorney Jason Hain had many detailed conversations explaining the peril that Lady Benjamin was in at the hands of Defendants, should they in the future intend to break the law. On Nov 3 2021, they did in-fact break the law and committed PC460, burglary of an occupied dwelling.

10. The Defendants later attempted to cover up or conceal their criminal acts, denying under oath that there was any evidence Lady Benjamin lived in the subject premesis, when they in-fact literally attempted to throw that evidence away.

11. Plaintiff suffered damages as a result

12. Defendants together and individudually, did in-fact collaborate to and or otherwose interfere with the ability of plaintiff to use her property, did take her property, and did destroy much of her property. Evidence including without limitation, the iPhone Activation (exhibit A) message, clearly show evidence of this. Exhibits B-D clearly evidence theft conversion and unlawful and deliberate taking of plaintiff's assets withtou compensation.

13. In particular dragging her mattress into the middle of revere ave on trash day, on a day Jadallah was present and supervising, was particularily egregious and obviously intentional.

14. Plaintff suffered immense damages from this and may never recover.

15. Therefore, these Defendants, with deliberate indifference, willful negligence, and oppression fraud and malice

16. As a direct and proximate result of Defendants' actions, Plaintiff has been and continues to be damaged in an amount to be proven at trial. Furthermore, because Defendants' conduct was undertaken in bad faith and with fraud, malice, and oppression, Plaintiff is entitled to punitive damages.

**<u>SEVENTH CAUSE OF ACTION</u>**

**FELONY DESTRUCTION OF EVIDENCE**

**Brought under State tort law and 42USC 1983 including without limitation the 4th and 14th amendment.**

**AGAINST ALL DEFENDANTS**

1. Plaintiff incorporates herein all of the allegations, averments and matters contained as alleged heretofore as if set forth at length herein *in haec verba.*

2. Defendants, either directly or through acting as agencts of others or conspiring

together, did wrongfully and intentionally interfere with the property of plaintiff, with the intent to deprive the owner of the property.

3. Defendants deliberately destroyed evidence to conceal their crimes, including without limitation making false statements under oath about throwing away Lady Bejamin's medically required memory foam mattress. Later they would claim there was no evidence of habitation. They did this premeditatedly, with the express intent that their crimes would be concealed and they would get away with multiple felony offenses, violating in addition to the numerous other sections, Penal Code 135 Feony Destruction of Evidence.

4. Jadallah has had his real estate license rescinded.

5. It is undisputed that Defendants willfully and intentionally, without limitation, burglarized Lady Benjmain's occupied dwelling, dragged her mattress into the middle of the street, then falsely claimed they saw "no evidence" she was living there.

6. Defendants threw away or destroyed or stole for their own use – many or all of Plaintiff's personal effects, including without limitation gifts from deceased romantic partners, artifacts and loudspeakers she build as a child with noted audio engineers who are now also deceased, etc. No amount of money can ever compensate for these losses, but some is a start.

7. The acts of Defendants were not only deliberate and reckless, but they were all warned beforehand that their actions were illegal through Plaintiff's counsel. In particular, attorney Jason Hain had many detailed conversations explaining the peril that Lady Benjamin was in at the hands of Defendants, should they in the future intend to break the law. On Nov 3 2021, they did in-fact break the law and committed PC460, burglary of an occupied dwelling.

8. The Defendants later attempted to cover up or conceal their criminal acts, denying

under oath that there was any evidence Lady Benjamin lived in the subject premesis, when they in-fact literally attempted to throw that evidence away.

9. Plaintiff suffered damages as a result.

10. Defendants together and individudually, did in-fact collaborate to and or otherwose interfere with the ability of plaintiff to use her property, did take her property, and did destroy much of her property. Evidence including without limitation, the iPhone Activation (exhibit A) message, clearly show evidence of this. Exhibits B-D clearly evidence theft conversion and unlawful and deliberate taking of plaintiff's assets withtou compensation.

11. In particular dragging her mattress into the middle of revere ave on trash day, on a day Jadallah was present and supervising, was particularily egregious and obviously intentional.

12. Plaintff suffered immense damages from this and may never recover.

13. Therefore, these Defendants, with deliberate indifference, willful negligence, and oppression fraud and malice

14. As a direct and proximate result of Defendants' actions, Plaintiff has been and continues to be damaged in an amount to be proven at trial. Furthermore, because Defendants' conduct was undertaken in bad faith and with fraud, malice, and oppression, Plaintiff is entitled to punitive damages.

## SEVENTH CAUSE OF ACTION

## VIOLATIONS OF THE UNRUH CIVIL RIGHTS ACT AND OF TITLE VI

## Brought under State tort law and 42USC 1983 including without limitation the 4th and 14th amendment.

## AGAINST ALL DEFENDANTS

1. Plaintiff incorporates herein all of the allegations, averments and matters contained

as alleged heretofore as if set forth at length herein *in haec verba.*

2. Defendants engaged in the acts alleged herein because LADY is a lady and because she is transgender.

3. For each wrongful act which defendants committed as alleged herein, and other acts as well, defendants must pay to LADY at least $4,000 and in-fact much more, and up to three times actual damages as well as actual damages, and reasonable attorney's fees.

4. It is undisputed that Defendants were business partners and menors of LADY CANNON for over a decade. It is further undisputed that approx. 15 days after LADY came out as Transgender to them, Defendants attempted their first of many failed "nusience" evictions against her, claiming her mere presense on the property somehow consitutted a "life hazard" of some kind. None of them succeeded and LADY CANNON was never evicted from the premeiss.

5. As a direct and proximate result of Defendants' actions, Plaintiff has been and continues to be damaged in an amount to be proven at trial. Furthermore, because Defendants' conduct was undertaken in bad faith and with fraud, malice, and oppression, Plaintiff is entitled to punitive damages.

## EIGHTS CAUSE OF ACTION

## DEFAMATION and DEFAMATION PER SE

**Brought under State tort law and 42USC 1983 including without limitation the 4th and 14th amendment.**

## AGAINST ALL DEFENDANTS

1. Plaintiff incorporates herein all of the allegations, averments and matters contained as alleged heretofore as if set forth at length herein *in haec verba.*

2. Defendants have made and continue to make numerous false and accusatory

statements about CANNON, namely that she is part of an identify fraud ring, that she was evicted from 5030 3rd st, etc. They make these comments to Police, the City DPW, DBI, and other agencies, and to other 3rd parties incuding without limitation, LADY CANNON's customers, business partners, co-workers, friends, lovers, and neighbors.

3. These statements were made deliberately, knowing they were false at the time, with the intent to harm LADY CANNON.

4. LADY continues to suffer harm from these false statements, and the harm is ongoing.

5. Accuzations of criminal conduct are considered defamatory per-se or upon their face, and do not require evidence of harm, the conduct is so outrageous and egregious that the court presumes the harm. This is well settled law but if Your Honor would like a citation we can provide one.

6. It is undisputed that Defendants were business partners and menors of LADY CANNON for over a decade. It is further undisputed that approx. 15 days after LADY came out as Transgender to them, Defendants attempted their first of many failed "nusience" evictions against her, claiming her mere presense on the property somehow consitutted a "life hazard" of some kind. None of them succeeded and LADY CANNON was never evicted from the premeiss.

7. As a direct and proximate result of Defendants' actions, Plaintiff has been and continues to be damaged in an amount to be proven at trial. Furthermore, because Defendants' conduct was undertaken in bad faith and with fraud, malice, and oppression, Plaintiff is entitled to punitive damages.

PRAYER

WHEREFORE PLAINTIFFS PRAY JUDGMENT AS FOLLOWS:

1. Declaratory relief consistent with the injunction, including a declaration that Defendants violated Plaintiff's Constitutional rights, including her, Fourth, and Fourteenth Amendment rights, by (a) seizing her property without probable cause and (b) performing an illegal extrajudicial eviction absent a court order authorizing such, barring her from her residence his residence without probable cause and without a warrant;
2. General, Compensatory, and Special damages in an amount to be proven at trial not under $1,125,000,000.00;
3. Presumed damages based on, among other things, harm to Plaintiff's reputation, business, stock offering and price, emotional health, pain and suffering, and personal life in the amount of $10,000,000,000.00;
4. Punitive damages;
5. Award Plaintiff costs of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988; and
6. Any other further relief as the Court deems just and appropriate to protect the peaceable exercise or enjoyment of the right or rights secured.
7. Three times all special and general and other damages pursuant to 42 U.S.C. § 1983;

**PLAINTIFFS DEMAND TRIAL BY JURY ON ALL CAUSES OF ACTION.**

Date: September 19, 2022

Lady Benjamin Cannon, A.S.C.E.

LADY BENJAMIN CANNON, ASCE
6x7 Global Security
Attorney in propia persona