Andrew G. Watters
555 Twin Dolphin Dr., Ste. 135
Redwood City, CA 94065
andrew@andrewwatters.com
+1 (415) 261-8527

Pro Per

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

LADY BENJAMIN CANNON,

Plaintiff,

v.

SAN FRANCISCO POLICE DEPARTMENT, et al.,

Defendants.

Case no: CV22-6778-TSH

**DEFENDANT ANDREW WATTERS'S EX PARTE APPLICATION FOR APPOINTMENT OF GUARDIAN AD LITEM FOR PLAINTIFF**

Rule 17(c)(2)

**APPLICATION**

Pursuant to Rule 17(c)(2) and CCP sec. 373(c) and 372(a)(1), Plaintiff seeks appointment of a guardian ad litem for Defendant Benjamin P.D. Cannon based on her incapacitation. Ms. Cannon is a lifelong sufferer of autism, which severely impairs her perceptions, and is also untreated for an undetermined mental health condition that has repeatedly resulted in “5150” hospitalizations under state law. The numerous delusional statements in her complaint, which is essentially a voluminous screed directed at persons who have offended her, also show that Ms. Cannon is an incompetent person. Among other issues, she is of the false belief that she deserves to be addressed by her supposed royal title “Lady Benjamin Cannon of Glencoe” and not her legal name. This application for appointment of a guardian ad litem is supported by the Declaration and Memorandum of Points and Authorities below.

Date: November 6, 2022

*Andrew G. Watters*

Andrew G. Watters

**MEMORANDUM OF POINTS AND AUTHORITIES**

The Federal courts follow state law in connection with a person’s capacity to sue, which is a probate matter-- and the “probate exception” to Federal court jurisdiction does not prohibit a Federal tribunal from adjudicating a peripheral probate issue: “the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent’s estate; it also precludes federal courts from

endeavoring to dispose of property that is in the custody of a state probate court. *But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.*" Marshall v. Marshall, 547 U.S. 293, 311-312 (2006) (emphasis added). Rule 17(c)(2) applies.

In California, a party is incompetent for the purposes of determining necessity to appoint a guardian ad litem if he or she lacks capacity to understand the nature or consequences of the proceeding, or is unable to assist counsel in the preparation of the case. *AT&T Mobility*, *LLC v. Yeager*, 143 F.Supp.3d 1042 (E.D. Cal. 2015).

The statutory provisions on representation of insane or incompetent persons are similar to those applicable to infants. Both groups are regarded by the law as unable to act independently. Section 372 of the Code of Civil Procedure provides that when a person lacking legal capacity to make decisions or a person for whom a conservator has been appointed is a party, a guardian ad litem may be appointed by the court:

"A guardian ad litem may be appointed in any case when it is deemed by the court in which the action or proceeding is prosecuted, or by a judge thereof, expedient to appoint a guardian ad litem to represent the minor, [or the] person lacking legal capacity to make decisions...." CCP sec. 372(a)(1).

An adult is incompetent for purposes of Code of Civil Procedure Sections 372 and 373 if a preponderance of the evidence shows that the individual is either: (1) a person for whom a conservator could be appointed, as set forth by Probate Code Section 1801, or (2) a person who is unable to understand

the proceedings or effectively assist his or her attorney in protecting his or her interests. *Sarracino v. Superior Court*, 13 Cal. 3d 1, 11-12 (1974).

Evidence of incompetence may be drawn from various sources, but the evidence relied upon must "speak...to the court's concern...whether the person in question is able to meaningfully take part in the proceedings." *In re Christina B.*, 19 Cal. App. 4th 1441, 1450 (1993). California law adopts a broad view of relevance, emphasizing a trial judge's "duty...to clearly bring out the facts." *In re Conservatorship of Pamela J.*, 133 Cal. App. 4th 807, 827-28 (2005). The court's first-hand observations of and interactions with the person may inform a court's decision. See *Guardianship of Walters*, 37 Cal. 2d 239, 249 (1951); see also *In re McConnell's Estate*, 26 Cal. App. 2d 102, 106 (1938).

CCP sec. 373(c) permits any party to the action to seek appointment of a guardian ad litem. As is true for appointments for minors, the appointment may properly be made on an ex parte application. *Sarracino v. Superior Court*, 13 Cal. 3d 1, 12 (1974); *Granger v. Sherriff*, 133 Cal. 416, 418 (1901); *Briggs v. Briggs*, 160 Cal. App. 2d 312 (2d Dist.1958).

Here, Ms. Cannon is obviously suffering from a mental health crisis. She is autistic, was "5150'ed" at least three times in 2020, and is not well. She was squatting in a storage unit at the former location of her business in San Francisco, where she was the subject of an unlawful detainer proceeding and was ultimately evicted. She has consumed vast legal resources and public safety resources, as well as numerous hours of attorney

time, on her various misdeeds, broken promises, and rescheduled meetings, among other things. This latest suit against essentially everyone in her recent sphere is the last straw; someone needs to make decisions for her because she is clearly incompetent.

Date: November 6, 2022

*Andrew G. Watters*

Andrew G. Watters

**DECLARATION OF ANDREW WATTERS**

I, Andrew G. Watters, declare:

1. I am an individual above the age of 18 years of age and a Defendant in this case. I have personal knowledge of the following facts and if called as a witness, I would and could competently attest to the truth of these facts.

2. I filed a state court complaint against Ms. Cannon and her company 6x7 Networks, LLC on or about August 26, 2020 asserting fraud, theft, and unpaid wages arising out of my time as a customer of her purported telecom company from 2019 to 2020, and briefly as an employee in June/July 2020. Ms. Cannon answered the complaint on July 29, 2021 after obtaining relief from default. I document the fraud and Ms. Cannon's various scams in my online Hall of Shame, which is now the top link on Google for Ms. Cannon and 6x7 Networks after the 6x7 website recently went offline without a trace: https://www.andrewwatters.com/hall-of-shame/6x7/

3. As indicated on the web page, Ms. Cannon is engaged in a large wire fraud scam, in which she offers telecom services under her own brand that are drastically different from what

is represented, and which are in large part merely re-sold in violation of the actual providers' terms of service.

4. Ms. Cannon freely states that she is autistic, although this should not be inferred as the cause of her bad behavior.

5. Trial in the State court was originally set for April 4, 2022. Neither defendant appeared. The State court continued the trial to May 4, 2022 so that Defendants' attorney could file a motion to withdraw, which he did. On April 22, 2022, Defendant Ms. Cannon filed a purported notice of removal to Federal court claiming there is diversity of citizenship. However, in the notice of removal, Ms. Cannon admitted residing in California. I also reside in California. Thus, I sought immediate remand in a separate motion for the purpose of proceeding with the State court action, which was granted. Ms. Cannon successfully delayed the trial by nine months, as it is now set for February 2023. The complaint I filed against her offered her the opportunity to cross complain, which was required for transactionally related claims. She did not do so.

6. In addition to autism, Ms. Cannon has a history of "5150"[1] detentions under state law due to grave disability as well as danger to self and others. She was "5150'ed" at least three times in 2020 during the time I was a customer, which caused disruptions to the company's services and email because bills didn't get paid and she was out of contact.

7. Her living and work situations in the same time frame were also great cause for concern. She was stealing substantial

1 Cal. Welfare and Institutions Code sec. 5150.

amounts of electric power from PG&E through an illegal tap that was also dangerous[2]. There were rats in the work space as well as a bathtub, bed, and clothing. She had some type of loft in the space, where she claimed to have a Barrett .50 caliber rifle[3].

8. Ms. Cannon has made repeated alarming and/or delusional statements to me, including but not limited to the following:

a. That she is a former defense contractor who held a Top Secret security clearance and participated in various classified defense programs;

b. That she is going to drill a tunnel under San Francisco Bay using Elon Musk's Boring Company, with $7 million pledged so far;

c. That she wishes to form a private railroad so that she can become a transit police officer[4] and carry a concealed weapon throughout the United States;

d. That she plans to have a fleet of cable-laying ships that will travel the world laying fiber cable and double as private pleasure yachts;

---

2 I discovered and documented the illegal power tap in November 2021 when I attended the eviction of the LLC from the basement and retail space.

3 I am a proud supporter of the Second Amendment, however, Ms. Cannon is someone who I do not trust with firearms because of her severe, untreated mental health problems.

4 Ms. Cannon has been charged in state court at least once with impersonating a police officer. In one case, she pled no contest to giving a false vehicle registration, apparently as part of a plea bargain in order to have the impersonation charge dismissed. Ms. Cannon has a pending bench warrant in Sonoma County for environmental crimes arising out of unlawful contamination of a waterway, among other violations of law.

e. That her computer systems have been completely compromised by the Russian Federation and she had no idea how to even detect the compromise.

9. Ms. Cannon also filed a willfully false SAM registration for Federal contracts, in which she falsely certified under penalty of perjury that she was female and entitled to woman-owned small business preferences and set-asides. As of July 2020 when the SAM registration was filed, Ms. Cannon was biologically male and had not had gender reassignment surgery, nor had she filed a petition for gender change. She was merely a transvestite, which is not a female-qualifying status under SAM registration regulations. I know this because Ms. Cannon would deliberately walk around the work space in a bath robe that she occasionally left open in front, and I had to remind her not to expose herself to me. I filed a complaint with the FBI about the false SAM registration, but there was no action apparently taken. I am not transphobic; I simply want people to be honest about their gender status and I refuse to use Ms. Cannon's fake royal title.

10. Based on the foregoing, I am accusing Ms. Cannon of being incompetent and I seek the appointment of a guardian ad litem for her in order for this matter to be handled appropriately.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: November 6, 2022

Andrew G. Watters

Andrew G. Watters